INHABITANTS OF CHARLESTOWN *vs.* COUNTY COMMISSION-
ERS OF MIDDLESEX.

Where the legislature authorized the building of a bridge over a navigable stream,
" either solid or on piles, leaving sufficient passages for the water," as certain com-
missioners might deem necessary, and a bridge was built, by direction of those com-
missioners, two thirds of the length of which was solid, and the other third, over the
channel and deeper parts of the stream, was on piles ; and scows, gondolas, and boats
and vessels without masts, or with moveable masts, empty or loaded, could and did
advantageously pass and repass under said bridge ; it was *held*, that the stream had
not ceased to be navigable, and that the county commissioners had no authority to lay
out a highway over it.

SHAW, C. J.   The inhabitants of the town of Charlestown
come before the court, by their petition for a writ of *certiorari*,
and allege that they are aggrieved by the doings of the board of
county commissioners, in laying out a highway, partly in Cam-
bridge and partly in Charlestown, and in requiring the petitioning
town to pay a large sum of money, to reimburse the county the
expenses of constructing said highway.   Several exceptions are
taken by the petitioners to the regularity of the proceedings of
the commissioners ; but the principal one, and that on which
notice was ordered, is, that the highway in question was laid out
over Miller's River ; that this is a navigable stream, and there-
fore that the county commissioners had no jurisdiction of the
subject, and no authority so to lay out a highway.

The cause has been submitted upon the petition for a *certio
rari*, supported by a brief statement of facts, amongst which it
is agreed, that all the facts stated in the reported case of *Com-
monwealth v. Charlestown*, 1 Pick. 180, are to be deemed true,
for the purpose of this hearing.

It is now well established by a series of decisions, that the
county commissioners, exercising the same jurisdiction which
was formerly vested in the court of sessions, have no author-
ity, within the ordinary powers conferred on them by the general
laws, to lay out a highway over navigable waters.   1 Pick. *ubi
sup.*   What is a navigable river, it may not be easy to express
by a definition applicable to all cases.   Some approximation,
however, has been made towards it, by judicial decisions, in

which it is held, that all creeks, coves and streams, in which the tide ebbs and flows, and which are large enough to be available to any useful purpose for trade or agriculture, are navigable waters. *Commonwealth* v. *Charlestown*, 1 Pick. 180. *Commonwealth* v. *Chapin*, 5 Pick. 199. *Rowe* v. *Granite Bridge Corp.* 21 Pick. 344. But it is unnecessary to examine this point more particularly in the present case, because the case first above cited arose respecting the same Miller's River, which is in question here, and the adjudication, turning upon the question, whether the bridge in that case was over navigable water, it being a bridge over the same river, at a point higher up, at which it was narrower, if it was navigable there, *à fortiori* was it navigable lower down and nearer the sea, where the bridge now in question is placed. Indeed, it is not seriously contended that this was not originally, and in its natural character, a navigable stream ; but it is insisted, that the acts of the legislature, authorizing the building of the Lowell Rail Road Bridge, at a point lower down the stream, and the actual erection of a bridge there, have so far changed the character of the stream, that it has ceased to be navigable. This is the question, which we have been called upon more particularly to consider.

We cannot doubt that a navigable stream may cease to be such, by the appropriation of the soil, under legislative authority, to other purposes ; as if the legislature were to authorize the erection of a solid dam across a navigable creek, and permit the land to be wholly filled up and converted into house lots. In such case, it would seem to follow as a necessary consequence, that the jurisdiction of the county commissioners, to lay out necessary highways over such newly made land, would attach. The question is, whether that has been done by the acts in question.

The Boston and Lowell Rail Road Corporation was established by *St.* 1830, c. 4, with general powers to lay out and construct a rail road, "at or near Boston, and thence to Lowell " ; but the original act did not go into particulars. In 1832, an additional act was passed, expressly authorizing the bridge in question, and directing the manner in which it should be built

*St.* 1832, *c.* 87. It provided for the erection of a bridge over Charles River, with suitable provisions for preserving the navigation of that river. By § 4, it is provided, that in case the bridge shall be so located as to cross the channel of Miller's River, a draw shall be made, and other means adopted to facilitate the navigation. Then comes the 8th section, on which the argument in this case depends, in these terms : " If said rail road shall pass through the village of East Cambridge and above the principal wharves now located on Miller's River, the said corporation are hereby authorized to construct a bridge across said Miller's River, and to build the same either solid or on piles, leaving sufficient passages for the water, as in the opinion of the commissioners may be necessary." These were commissioners, for whose appointment by the governor and council, provision was made in another part of the act.

We cannot perceive in this provision any intention, on the part of the legislature, to put an end to the character of Miller's River, as a navigable stream. So far as it regards the lower part of Miller's River, on which the principal wharves are situated, there is a manifest solicitude to preserve the navigation. In regard to the upper section of that river, the legislature, instead of judging what kind of bridge should be built, delegated that power to commissioners, to act in their behalf. The corporation were authorized to build a bridge, solid or on piles, leaving sufficient passages for the water, as these commissioners should judge necessary.

It is argued, that this was intended to provide only a sufficient passage for the water to run out. But this is not the necessary nor perhaps the most obvious construction. Sufficient passages for the water, in the opinion of the commissioners, as applied to the subject matter, a navigable stream on tide water, may well be understood to mean such passages as will leave the beneficial use of the water, as far as it can be had consistently with the erection of a suitable bridge for the rail road.

These commissioners did in fact authorize a bridge, two thirds of which in length was solid, and one third, that over the channel and deeper part of the river, on piles. Then taking what

the Commissioners have done under the authority delegated to them by the legislature, as a part of the exercise of the public jurisdiction over this river, it stands upon the same footing, as if the original act had in terms authorized the building of such a bridge as was in fact built. The result is, that the State, in its sovereign capacity, has authorized the erection of a bridge, one third part of the length of which, in the deepest part, is to be on open piles, through which the tidewater may flow freely ; and it appears by the evidence, that through and under this bridge, scows, gondolas, and boats and vessels, without masts, or with falling or moveable masts, may advantageously pass and repass, loaded or empty. The effect would be to prevent the river from being navigated afterwards by vessels with standing masts ; but we are not to presume that the intention of the legislature was to diminish it beyond that limit. The right of navigation for the public, with all kinds of rafts, boats and vessels, was complete and entire before, and it was no further restrained, than is a necessary consequence of the erection of such an open bridge. But notwithstanding such a partial change in the mode of navigation of the river, it was still capable of being navigated for many useful purposes ; and therefore it did not cease to be a navigable stream, nor did the legislature intend to change the character of it, in this respect. The court are, therefore, of opinion, that the laying out of a high way over Miller's River, at the place in question, was not within the jurisdiction of the county commissioners, and that their adjudication, so far as it purported to provide for the erection of a bridge, or the establishment of a road over that river, was erro neous and ought to be reversed.

Some facts are mentioned in the agreed statement, respecting the character of the bridge actually built under the authority and direction of the commissioners, tending to show that some boats had passed under it, that in consequence of being built several feet lower than the rail road bridge, some boats have been able to pass under the latter, which could not go under the former · also, that the bridge crosses in a line diagonal to the stream We consider these facts wholly immaterial. It is not a question

whether this bridge is more or less favorable to navigation, than the rail road bridge ; nor whether . this might have been built in a form less injurious to navigation. It is solely a question of jurisdiction. If it was navigable, then the sole authority to determine, whether it was expedient that a highway or bridge should be built over it, was with the legislature, and not with the county commissioners. The legislature alone could determine the question of comparative public convenience, and either refuse to lay out a highway, which would impede the navigation, or grant it upon terms, conditions and reservations, as the public interests might, in their judgment, require, for the protection of the navigation. The objection to the proceedings of the commissioners is, not that the bridge built under their direction obstructs navigation ; nor would it obviate the objection, if it were shown that it was so built as not in the least degree to impede navigation. The objection is, that, the river being navigable, they had no authority by law to act upon the subject, and therefore that the proceeding was void. *

*Writ of certiorari ordered.*

*Greenleaf & J. Dana,* for the petitioners.
*L. M. Parker & Buttrick,* for the respondents.

---

* The legislature, by *St.* 1842, *c.* 87, authorized the county commissioners to lay out a highway over Miller's River, " if, in their opinion, the public convenience and necessity shall require it to be done. *Provided,* the expenses, heretofore incurred in the construction of said bridge, shall not be charged to the town of Charlestown or Cambridge.'